**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| CHEAPSIDE MINERALS, LTD. et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| DEVON ENERGY PRODUCTION | § | |
| COMPANY, L.P. f/k/a GEOSOUTHERN | § | |
| DEWITT PROPERTIES, LLC, | § | |
| GEOSOUTHERN ENERGY CORPORATION, | § | |
| BPX PRODUCTION COMPANY and BPX | § | CIVIL ACTION NO. 6:23-cv-34 |
| PROPERTIES (NA) LP as successors in | § | |
| interest to BHP BILLITON PETROLEUM | § | |
| PROPERTIES (N.A.), LP f/k/a PETROHAWK | § | |
| PROPERTIES LP and PETROHAWK | § | |
| ENERGY CORPORATION, and BPX | § | |
| OPERATING COMPANY as the merger | § | |
| successor to BPX PROPERTIES (NA) LP, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' AMENDED COMPLAINT**

TO THE HONORABLE U.S. DISTRICT JUDGE NELVA GONZALES RAMOS:

NOW COME Plaintiffs Cheapside Minerals, Ltd., et al., and file this, their Amended Complaint, complaining of Defendants Devon Energy Production Company, L.P., f/k/a GeoSouthern DeWitt Properties, LLC ("Devon"), GeoSouthern Energy Corporation, BPX Production Company, BPX Properties (NA) LP as successors in interest to BHP Billiton Petroleum Properties (N.A.), LP f/k/a Petrohawk Properties LP and Petrohawk Energy Corporation, and BPX Operating Company as the merger successor to BPX Properties (NA) LP (collectively, "BPX") and show as follows:

1

# I.
## CASE OVERVIEW

1.      Defendants Devon and BPX are public oil companies worth billions.  This lawsuit arises from their scheme to increase profits by breaching unique Gross Proceeds Plus oil and gas leases executed with the Plaintiff royalty owners.

2.      Texas's highest court has already determined, as a matter of law, what these leases require.  The law, as held by the Texas Supreme Court, is that Defendants must pay Plaintiffs a royalty on reductions included in their sales contracts that represent post-production costs.  That is because the leases contain unique, unambiguous language that plainly and formally require additions to Defendants' gross proceeds where Defendants sell Plaintiffs' oil and gas under contracts that include reductions for post-production activities the buyer may incur to get the oil and gas from the upstream sale location to the downstream market.  The Texas Supreme Court referred to these leases as calling for a "proceeds plus" royalty payment – meaning, gross proceeds plus the addition of any reductions in Defendants' sales contracts. Devon and BPX refuse to comply with their lease obligations.

3.      Devon and BPX sell oil and gas from Plaintiffs' leases (or lands pooled therewith) under written purchase contracts they negotiate with third parties.  If Devon or BPX perform the enhancing activities to transport the oil and gas from the well to sell at downstream markets, they would bear 100% of the post-production expenses associated with transporting to the downstream market while also receiving the enhanced, downstream value.

4.      For example, in the illustration below, Devon and BPX take on the post-production expenses to get the oil and gas from the well to the downstream market while also realizing the enhanced value (*i.e.* the downstream, published index price of $100/barrel). The

royalty paid Plaintiffs would be $20 per barrel ($100/barrel x 20% royalty).  The amount realized by Devon and BPX in taking the oil and gas to market would be $65/barrel.



5.      But, Devon and BPX recognize they could make even more money by indirectly passing a portion of the post-production costs to the Plaintiff royalty owners.  So, instead, Devon and BPX choose to sell at locations upstream from distant market centers, like at the well, and farm the post-production activities to third party purchasers.  The upstream sales contracts Devon and BPX negotiate include reductions and charges for the post-production costs Devon and BPX elected not to perform, which charges include costs of production, treatment, gathering, transportation, manufacturing, processing, and/or marketing whether these costs and charges are specified or not  That is, the price of oil and gas sold at upstream delivery points is calculated by subtracting post-production costs from a published, downstream index or benchmark price. These reductions represent post-production costs the buyer expects to incur to transport the oil and gas farther downstream to market.  By not adding these expenses to their gross proceeds, as these leases require, Devon and BPX indirectly pass a portion of the post-production expenses to the Plaintiff royalty owners, breaching the Gross Proceeds Plus leases while increasing their corporate profits.

6.    The below illustration makes this expense manipulation clear.  For example, the negotiated contract price for oil sold from Plaintiffs' leases near Victoria may be the published price for oil at a downstream market near Houston (e.g. NYMEX Index of $100/barrel), minus $15.00/barrel *for transportation*. Devon and BPX then pay Plaintiffs royalty on their gross proceeds of $85/barrel.



7.    By not adding the $15/barrel transportation expense to gross proceeds, as the Gross Proceeds Plus leases require, Plaintiffs indirectly bear a portion of the post-production costs to get the oil and gas to downstream markets.  As held by the Texas Supreme Court, this is a breach of the lease.

8.    When reductions in Devon's and BPX's upstream sales contracts are specified and their purpose identified, the exercise of adding the reductions to the gross proceeds is made simple.  It is inarguable that Devon and BPX owe Plaintiffs for the specified costs that were not

added to gross proceeds prior to the calculation of the royalties owed. Nevertheless, Devon and BPX have failed to add specified expenses included in their sales contracts to gross proceeds and have, therefore, underpaid the royalty owners in situations in which the enumerated expenses are clearly identified as post-production costs.

9.      Aware that the wording of included reductions for expenses and costs in their sales contracts alert Plaintiffs to monies owed to them, Devon and BPX hide post-production expenses included in their upstream sales contracts by not specifying the purpose for the reduction or being careful to deceptively label the reduction in terms of a "differential," "discount," or "adjustment." Devon and BPX then pass the post-production expenses to the Plaintiff royalty owners by refusing to add the unspecified post-production cost or "differential" to gross proceeds prior to calculating royalties owed Plaintiffs in breach of the Gross Proceeds Plus leases.

10.     For example, the negotiated contract price for oil sold from Plaintiffs' leases near Victoria may be the published price for oil at a downstream market near Houston (e.g. NYMEX Index of $100/barrel), minus $15.00/barrel (alternatively, the reduction may be termed a "discount," "differential," or "adjustment" of $15/barrel). Devon and BPX then pay Plaintiffs a royalty on their gross proceeds only of $85/barrel.

5



11.     By not adding the $15/barrel post-production "differential" to gross proceeds, as the Gross Proceeds Plus leases require, Plaintiffs indirectly bear a portion of the post-production costs to get the oil and gas to downstream markets.  This is a breach of the lease.

## II.
## INTRODUCTION

12.     This lawsuit is governed by Texas law and is identical, in many respects, to Cause No. 12-12-22,501; *Michael A. Sheppard, et al. v. GeoSouthern DeWitt Properties, LLC, et al.*, In the 24th District Court, DeWitt County, Texas (hereafter, the "Crain/Sheppard Lawsuit").  That is, Plaintiffs' Leases at issue here are identical to the lease royalty provisions at issue in the Crain/Sheppard Lawsuit.  That lawsuit, involving these identical lease royalty terms and the same defendants, was brought and litigated with the understanding that it would establish the law as it relates to these royalty underpayment claims and streamline the issues in this *Cheapside*

suit. The Crain/Sheppard Lawsuit decided as a matter of law that Defendants breached the royalty provisions numerous ways by failing to add to their gross proceeds various stated reductions for post-production costs included in their sales contracts (*e.g.*, NYMEX minus $18.00 per barrel *for transportation*). *See Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332 (Tex. 2023). Here, Defendants' liability to Plaintiffs under sales arrangements including reductions the purpose of which is specified, and damages owed as a result, is settled as a matter of law.

13.    What remains unresolved is Defendants' liability under practically identical sales contracts that include similar (and sometimes identical) reductions but do not specify the purpose for the reduction (*e.g.*, NYMEX minus a *differential* of $18.00 per barrel). The Corpus Court of Appeals ruled in the Crain/Sheppard Lawsuit that the plaintiffs did not recover these unspecified damages in that case. However, the Court made clear that if plaintiff royalty owners offer evidence and prove that unspecified reductions or charges are, in fact, for costs of production, treatment, gathering, transportation, manufacturing, processing, and/or marketing then plaintiffs do recover, and those costs should be added to gross proceeds prior to calculating royalties under these Gross Proceeds Plus Leases. In short, upon proof of their purpose, those damages under the unspecified contracts are recoverable.

14.    The Texas Supreme Court went considerably further and states in its opinion ". . . Paragraph 3(c) (of the lease) is exhaustive and unmistakably clear that the landowners' royalty is to be free of 'any costs or expenses' . . . with *the only exception* being the landowners' pro rata share of severance or production taxes. . ." clearly indicating that any cost or expense, other than taxes, regardless of its "purpose" is recoverable. It is clear from the Supreme Court opinion that, in subsequent suits, such as this one, the Defendant oil companies must add to gross

proceeds any and all reductions, regardless of purpose, except for taxes. Even so, Plaintiffs will establish that the unspecified reductions in this case are no different than those specified reductions for post-production costs in Defendants' other, similar sales contracts, where Defendants have already been found liable by the Texas Supreme Court. That is, Plaintiffs' evidence will establish that the purpose of unspecified reductions included in Defendants' sales contracts are for expenses or costs of production, treatment, transportation, manufacturing, processing, or marketing of oil or gas from Plaintiffs' leases (or lands pooled therewith).

15.     Additionally, Defendants' *Burlington v. Tex. Crude Energy* argument unconvincingly asserts that Plaintiffs' Texas Supreme Court stamped "Gross Proceeds Plus" leases are actually "proceeds-at-the-well" leases entitling defendants to deduct all post-production costs and reduce Plaintiffs' royalty to an at-the-well value no matter where defendants choose to sell or how they indirectly pass expenses and costs included in their sales contracts onto Plaintiffs. Not only is this *Burlington* argument wrong, but it is also barred, waived, collaterally estopped, and precluded. These positions have been rejected by the Texas Supreme Court. *See Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332 (Tex. 2023) (holding these identical lease royalty provisions create a "gross proceeds plus" oil and gas lease that requires defendants to pay royalty on post-production expenses included in their sales contracts by adding the expenses to gross proceeds, even if such expenses are those of a third-party or incurred after the point where defendants choose to sell production from plaintiffs' leases.).

16.     Plaintiffs seek monetary damages for unpaid royalties on expenses included in Devon's and BPX's sales contracts that were required to be added to gross proceeds, including interest owed on these delinquent royalty payments. Plaintiffs also seek recovery of their

attorneys' fees and costs, including an award considering multiplying factors as allowed under Texas law.

## III.
## VENUE

17.    Venue is proper in the United States District Court for the Southern District of Texas, Victoria Division. *See* 28 U.S.C. § 1441(a). This action was originally filed in the District Court of DeWitt County, Texas, 267th Judicial District and subsequently removed by Defendant Devon. Accordingly, venue lies in the United States District Court for the Southern District of Texas, Victoria Division, *i.e.* "the district court of the United States for the district and division embracing the place where such action is pending." *Id.*

## IV.
## TOLLING AGREEMENT

18.    Many Plaintiffs herein originally filed their claims against defendants on October 30, 2015, under Cause No. 15-11-23.575; *Cheapside Minerals, Ltd., et al., v. BHP Billiton Petroleum Properties (N.A.), LP f/k/a Petrohawk Properties LP, et al.*, In the 24th District Court, DeWitt County, Texas (the "C&S Companion Lawsuit").   Through a Limitations Tolling, Waiver, and Standstill Agreement ("Tolling Agreement")[1], and subsequent amendments thereto, Plaintiffs and Defendants agreed to nonsuit without prejudice the C&S Companion Lawsuit and toll all statutes of limitation applicable to Plaintiffs' claims for the period beginning the first day of the month in which each plaintiff joined the C&S Companion Lawsuit or was added under the Tolling Agreement.   The parties also agreed Texas law governs their dispute.   The primary purpose of the tolling agreement was so that the parties could establish Texas law in good faith

---

[1] Exhibit A.

and then be bound by it in any subsequent litigation streamlining the litigation process and removing from the table arguments rejected by the Texas Courts.

19.    Plaintiffs provided written notice to Defendants terminating the Tolling Agreement on June 19, 2023.  Pursuant to the terms of the Tolling Agreement, the applicable statute of limitations cutoff date for Plaintiffs to file suit against Defendants asserting claims not otherwise barred by limitations was July 19, 2023.  Plaintiffs filed their original petition on June 22, 2023, timely bringing their claims against defendants.

## V.
## CONDITIONS PRECEDENT

20.    All conditions precedent to Plaintiffs' claims for relief, including notice of default in payment of delinquent royalties, have been performed, have occurred, or have been waived.

## VI.
## PARTIES

21.    Plaintiff and Defendant parties are set forth in the attached Appendix.  All parties have appeared in this action.

## VII.
## FACTUAL BACKGROUND

**A.  The Contractual Relationship between Defendants and Plaintiffs**

22.    Plaintiffs own royalty interests in oil and gas producing properties located in DeWitt County, Texas.  Plaintiffs are the Lessors in identical oil and gas leases ("Plaintiffs' Leases" or "the Leases").  Defendants are the current or former Lessees of the oil and gas leases pursuant to assignment(s) from or the acquisition of the original named Lessee.

**B. The Leases – Gross Proceed Plus**

23.    The Leases constitute written contracts by and between the Plaintiffs and the Defendants. The Leases impose obligations upon the Lessee, and by acceptance of the Leases, Defendants obligated themselves to perform express and implied obligations arising under the Leases. A copy of one of the Plaintiff's leases is attached hereto as "Exhibit B" as an example of the oil and gas lease royalty provisions applicable to all Plaintiffs and is incorporated herein for all purposes.

24.    The Leases have identical language regarding the payment of royalties which the Texas Supreme Court has broadly interpreted and deemed "proceeds plus leases," requiring a two-step calculation. *See Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332 (Tex. 2023).  The first step in determining the royalty base is to calculate gross proceeds received for the sale of oil and gas from Plaintiffs' Leases.

<u>**The royalties to be paid by Lessee are:**</u>

**3(a) – Oil Royalty Provision**

1/5th of that produced and saved from said land, same to be delivered, free of all costs and expenses to the Lessor into the pipeline, or other receptacle to which the Lessee may connect its wells or the market value thereof, at the option of the Lessor, such value to be determined by (1) the highest posted price, plus premium, if any offered or paid for oil, condensate, distillate, or other liquid hydrocarbons, respectively of a like type and gravity for the field where produced and when run, or (2) gross proceeds of the sale thereof, whichever is greater.

**3(b) – Gas Royalty Provision**

1/5th of the greater of (1) the market value at the wellhead of such gas, paid to Lessor free of all costs and expenses, or (2) the gross proceeds realized from the sale of such gas, free of all costs and expenses, to the first non-affiliated third-party purchaser under a bona fide arm's length sale or contract. "Gross proceeds" (for royalty payment purposes) shall mean the total monies and other consideration accruing to or paid the Lessee or received by Lessee for disposition or sale of all unprocessed gas proceeds, residue gas, gas plant products or other products. Gross proceeds shall include, but is not limited to advance payments, take-or-pay payments (whether paid pursuant to contract, in settlement or received by judgment) reimbursement for production or severance taxes and any and all other reimbursements or payments.

11

Ex. B, ¶3(a), 3(b).[2]

25.    The second step in determining royalties owed to Plaintiffs is to determine what amounts shall be added to the gross proceeds.  *Id*. at ¶3(c).  The inescapably broad language in Paragraph 3(c) of the Leases states:

**3(c) – Add-To-Gross Proceeds Provision**

If any disposition, contract or sale of oil or gas shall include any reduction or charge for the expenses or costs of production, treatment, transportation, manufacturing, process or marketing of the oil or gas, then such deduction, expense or cost shall be added to the market value or gross proceeds so that Lessor's royalty shall never be chargeable directly or indirectly with any costs or expenses other than its pro rata share of severance or production taxes.

Ex. B., ¶3(c).

Paragraph L. of the Lease Addendum states:

**Addendum, Paragraph L – Royalty Free of Costs**

Payments of royalty under the terms of this lease shall never bear or be charged with, either directly or indirectly, any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, post-production expenses, marketing or otherwise making the oil or gas ready for sale or use, nor any costs of construction, operation or depreciation of any plant or other facilities for processing or treating said oil or gas. Anything to the contrary herein notwithstanding, it is expressly provided that the terms of this paragraph shall be controlling over the provisions of Paragraph 3 of this lease to the contrary and this paragraph shall not be treated as surplusage despite the holding in the cases styled "Heritage Resources, Inc. v. Nationsbank, 939 S.W.2d 118 (Tex. 1996) and "Judice v. Mewbourne Oil Co., 939 S.W.2d 135-36 (Tex. 1996).

Ex. B, Addendum ¶L.

26.    The Texas Supreme Court held these same broad royalty provisions to unambiguously and plainly require Defendants to pay royalty not only on gross proceeds but also on amounts in Defendants' sales contracts representing "actual or anticipated postproduction

---

[2] This lease language is identical to the lease language in the Crain/Sheppard Lawsuit that Devon et al., now base their *Burlington* argument on.  These leases have been established as "gross proceeds plus" leases by no less an authority than the Texas Supreme Court, and the defendants' new arguments are collaterally estopped.

costs, even if such expenses are incurred only by the buyer after or downstream from the point of sale" so that Plaintiffs' "royalty 'never' bears those costs even 'indirectly.'" *Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332, 336 (Tex. 2023). Paragraph 3(c) in Plaintiffs' Leases "serves the distinct purpose of defining not what gross proceeds are but what must be added to that already defined term." *Id*. at 347.

## C. Defendants Breach Plaintiffs' Leases

27.    Defendants do not add and have not added to their gross proceeds any post-sale costs included in their sales arrangements. The reductions or charges included in Defendants' sales contracts, whether specifically identified as a post-production cost or not, are, in fact, for the expenses or costs of production, treatment, gathering, transportation, manufacturing, processing, marketing and/or other post-production cost of the oil or gas from the Leases. Therefore, Defendants were required to add these expenses to the gross proceeds royalty base so that Plaintiffs' royalty is never chargeable, directly or indirectly, with any costs or expenses other than their pro rata share of severance or production taxes. Defendants' failure to add these post-production costs to gross proceeds prior to calculating royalties owed Plaintiffs is an express breach of the Gross Proceeds Plus lease terms.

28.    Additionally, the Leases require Defendants to pay all royalties within 60 days of the end of the month in which the oil and gas was produced. Ex. B, Addendum ¶N. Defendants' must pay interest on the delinquent royalty amounts at 12% per year, "computed as to each of the delinquent amounts beginning with the date each becomes due." *Id*. Defendants have failed to pay all royalties due within 60 days of the production month and, therefore, must pay interest on the delinquent amounts from the date the royalties were due until paid in full.

29.     Some leases may require a lessor to notify Defendants of their delinquency and allow Defendants fifteen (15) days to pay all delinquent royalty amounts, without interest. Other leases require no notice. Plaintiffs provided Defendants with notice and Defendants failed to pay any delinquent royalties.

30.     Defendants' failure to pay delinquent royalties after receiving notice entitles Plaintiffs to receive interest on the delinquent royalty amounts and on all other royalties subsequently becoming delinquent until all delinquent payments have been paid at an interest rate of 12% per year and computed as to each of the delinquent amounts *beginning with the date each becomes due* (60 days of the end of the month in which the oil and gas was produced). Ex. B, Addendum ¶N (emphasis supplied).

31.     Upon information and belief, Defendants may also have sold oil and/or gas to affiliated companies or in less than arm's length transactions, yet in these instances have paid royalty based on the affiliate transaction proceeds in violation of the Lease.

**D.  Triable Issues**

32.     The bellwether Crain/Sheppard Lawsuit litigated many of the same issues present in this lawsuit. In that decade-long litigation, the plaintiffs in that case and the same Defendants herein agreed to test liability on twenty-three stipulated issues. *See* Exhibit C, Joint Stipulation as to Disputed Issues for Adjudication. As a matter of settled precedence, Defendants are liable to Plaintiffs and owe damages where reductions included in Defendants' sales contracts specify the reduction is for a post-production expense, including, but not limited to, the following stipulated issues from the *Sheppard* lawsuit :

a.      Stipulated Issue 2;
b.      Stipulated Issue 4;
c.      Stipulated Issue 7;

14

d.      Stipulated Issue 8;
e.      Stipulated Issue 9;
f.      Stipulated Issue 10;
g.      Stipulated Issue 11;
h.      Stipulated Issue 12;
i.      Stipulated Issue 13, and;
j.      Stipulated Issue 15 (except as to a contractual flat-rate fee of $0.03 per gallon).

*Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332 (Tex. 2023).

33.    What remains unsettled and constitute some of the issues brought forth by Plaintiffs to be tried in this case are sales contracts that include reductions like those stated in Defendants' other sales contracts above but do not specify what the fixed reduction represents. Some of those instances include, but are not limited to, the following stipulated issues from the *Sheppard* lawsuit:

k.      Stipulated Issue 1;
l.      Stipulated Issue 3;
m.      Stipulated Issue 6;
n.      Stipulated Issues 15 (as to the contractual flat-rate fee of $0.03 per gallon);
o.      Stipulated Issue 16;
p.      Stipulated Issue 17;
q.      Stipulated Issue 18, and;
r.      Stipulated Issue 19.

34.    Plaintiffs will establish that unstated reductions included in Defendants' sales contracts represent actual or anticipated postproduction costs that, as mandated by the Texas Supreme Court, must be added to defendants' gross proceeds so that Plaintiffs' royalty never bears those costs even indirectly.

## VIII.
## <u>CAUSES OF ACTION</u>

**Count One: Breach of Gross Proceeds Plus Lease – Underpaid Royalties**

35.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

36.     Defendants have breached express and implied obligations contained in and arising under the Lease. The Texas Supreme Court interpreted these same lease royalty provisions and held that the royalty provisions unambiguously and plainly require Defendants to pay royalty not only on gross proceeds but also on amounts in Defendants' sales contracts representing "actual or anticipated postproduction costs, even if such expenses are incurred only by the buyer after or downstream from the point of sale" so that Plaintiffs' "royalty 'never' bears those costs even 'indirectly.'" *See Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332 (Tex. 2023).

37.     Unspecified reductions, or reductions artfully labelled a "discount," "differential," "adjustment," or other general description, included in Defendants' dispositions or sales contracts represent actual or anticipated postproduction costs related to production, treatment, transportation, manufacturing, processing, or marketing. The unspecified reductions, or reductions artfully labelled a "discount," "differential," "adjustment," or other general description, are, in fact, reductions for these costs and must be added to the market value or gross proceeds so that Plaintiffs' royalty is never chargeable, directly or indirectly, with any costs or expenses other than their pro rata share of severance or production taxes.  In any event, these reductions are clearly not for taxes and, as made clear by the Texas Supreme Court, the only proper reductions from Plaintiffs' royalties that are not to be added to gross proceeds are their proportionate share of taxes.  Defendants' practices of not adding these unspecified reductions,

16

or reductions artfully labelled a "discount," "differential," "adjustment," or other general description, to their gross proceeds or market value constitute breaches of the Gross Proceeds Plus leases.

38.    Further, reductions included in Defendants' sales contracts specifying that the reduction is for a post-production expense Plaintiffs are prohibited from bearing directly or indirectly under the lease, should have been added to Defendants' gross proceeds for purposes of calculating plaintiffs' royalty under the Gross Proceeds Plus leases.  Defendants have not added specified reductions included in their sales contracts to gross proceeds when calculating Plaintiffs' royalty in breach of the Gross Proceeds Plus lease.

39.    Plaintiffs have suffered damages in the form of underpaid royalty as a result of Defendants' not adding to gross proceeds the specified and unspecified reductions included in their sales contracts.

**Count Two:    Breach of Lease – Interest on Delinquent Royalties**

40.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

41.    Plaintiffs' Gross Proceeds Plus Leases require Defendants to make all royalty payments within sixty (60) days after the end of each month the production occurred.

42.    Plaintiffs provided Defendants with notice of delinquency and Defendants failed to pay any delinquent royalties within fifteen (15) days.

43.    Plaintiffs are owed interest on all delinquent royalties at an interest rate of 12% per year, computed as to each of the delinquent amounts beginning with the date each became due (60 days of the end of the month in which the oil and gas was produced) until paid.

44.    Plaintiffs seek damages in the form of interest owed on all delinquent royalty payments.

**IX.**
**ACCOUNTING**

45.    Plaintiffs request an accounting from Defendants, jointly and severally, for all royalty due and payable from the production of oil, gas, and other minerals produced from the Leases.

**X.**
**INTEREST**

46.    The Leases provide for interest on delinquent royalties in the amount of at least 12% per annum.  Plaintiffs seek to recover interest on all past due royalties computed as to each of the delinquent amounts beginning from the date each was due under the Leases.

**XI.**
**ATTORNEYS' FEES**

47.    Plaintiffs seek to recover attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code, Section 91.406 of the Texas Natural Resources Code, and Plaintiffs seek to recover reasonable and necessary attorneys' fees for preparation and trial, appeal, and prosecuting or defending any appeal.  Plaintiffs seek to apply multiplying factors for fees or costs as provided by Texas law.

**XII.**
**DEMAND FOR JURY TRIAL**

48.    Plaintiffs demand a trial by jury on all issues so triable.

## **PRAYER**

Plaintiffs pray that they have judgment against Defendants:

a.   For underpayment of royalties and any other damages resulting from Defendants' breach of contract and/or fraud;

b.   For pre-judgment and post-judgment interest of at least 12% per annum as provided in the Leases;

c.   For attorneys' fees and costs and post-judgment interest on attorneys' fees;

d.   That the Court grant Plaintiffs' request for an Accounting; and,

e.   For such other and further relief to which the Plaintiffs may show themselves entitled.

**[Signature Page Follows]**

19

Respectfully submitted,

**McGinnis Lochridge LLP**
1111 West 6th Street, Bldg. B, Ste. 400
Austin, Texas 78703
512.495.6000 (telephone)
512.495.6093 (telecopier)
jmullins@mcginnislaw.com
idavis@mcginnislaw.com


By: _____
    Jordan Mullins
    (Attorney-In-Charge)
     Tex. State Bar No. 24070308
    S.D. Tex. Bar No. 2148651
    Ian Davis
    Tex. State Bar No. 24120793
    S.D. Tex. Bar No. 3644072

Crain & Sheppard
Michael A. Sheppard (SBN 18230700)
(*Pro Hac Vice*)
msheppard@crainandsheppard.com
106 S. Gonzales St.
Cuero, Texas 77954
Telephone: (361) 275-5111
Facsimile: (361) 275-5232

Cullen, Carsner, Seerden & Cullen
Kevin D. Cullen (SBN 05208625)
S.D. Tex. Bar No. 957
kcullen@cullenlawfirm.com
119 S. Main
Victoria, Texas 77902
Telephone: (361) 573-6318
Facsimile: (361) 573-2603

**Attorneys for Plaintiffs**

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 6th day of June, 2024, a true and correct copy of the foregoing document was served upon counsel of record.

*/s/ Jordan K. Mullins*
Jordan K. Mullins

<u>**APPENDIX**</u>

1.      Cheapside Minerals, Ltd., is an entity acting by and through its President, D'Ette Fly Cowan.  Ms. Cowan is a resident of Hill County and can be contacted by and through her attorneys, McGinnis Lochridge.

2.      Paschetag Limited Partnership, by Valentook, LLC, its General Partner, acting by and through Arthur G. Hermann, III, President, who is a resident of Lavaca County and can be contacted by and through his attorneys, McGinnis Lochridge.

3.      McDougal Family 2003 LTD is an entity acting by and through its General Partner, Fain McDougal.  Mr. McDougal is a resident of Brazos County and can be contacted by and through his attorneys, McGinnis Lochridge.

4.      Paul R. Lucas, Jr., Individually and as Independent Executor of The Estate of Mary K. Lucas, Deceased, is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

5.      James E. Natho is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

6.      Mary Natho is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

7.      Jason L. Natho and Lindsey E. Natho, Trustees of the Natho Revocable Living Trust dated May 6, 2011, are residents of Williamson County and can be contacted by and through their attorneys, McGinnis Lochridge.

8.      Jason L. Natho is a resident of Williamson County and can be contacted by and through his attorneys, McGinnis Lochridge.

22

9.      Clayton J. Natho is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

10.     Natho Farms Family Limited Partnership is an entity acting by and through its General Partner, James E. Natho.  Mr. Natho is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

11.     Jerry Voelcker is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

12.     Maria R. Voelcker is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

13.     G.W. Lamb, III, is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

14.     Elenor Lamb, is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

15.     Fred M. Hansen, Co-Executor of The Estate of Ellyce M. Hansen, is a resident of Harris County and can be contacted by and through his attorneys, McGinnis Lochridge.

16.     Fred M. Hansen, Trustee of the Fred M. Hansen Trust, is a resident of Harris County and can be contacted by and through his attorneys, McGinnis Lochridge.

17.     Josephine Todes is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

18.     Marian A. Braun, Trustee of the Marian A. Braun Trust, is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

19.     Robert A. Aronstein, Trustee of the Robert A. Aronstein Trust, is a resident of Harris County and can be contacted by and through his attorneys, McGinnis Lochridge.

20.    Sarah C. Aronstein was a resident of Harris County. She passed away several years ago. The Estate of Sarah C. Aronstein, by executor Robert A. Aronstein may be contacted by and through its attorneys, McGinnis Lochridge.

21.    Bernice Mazer is a resident of Bexar County and can be contacted by and through her attorneys, McGinnis Lochridge.

22.    Aronstein Interests, Ltd. is an entity acting by and through its General Partner, Robert A. Aronstein. Mr. Aronstein is a resident of Harris County and can be contacted by and through his attorneys, McGinnis Lochridge.

23.    Susan Hartman Pope, Trustee of the Susan Hartman Pope Trust, is a resident of Brazoria County and can be contacted by and through her attorneys, McGinnis Lochridge.

24.    Letty Hartman Lloyd, Trustee of the Letty Hartman Lloyd Exempt Trust, is a resident of Bexar County and can be contacted by and through her attorneys, McGinnis Lochridge.

25.    Wysenda Seifert Fischer, Individually and as Parent and Next Friend of Wryston Fischer is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

26.    Wycoda Fischer is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

27.    Austin Seifert is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

28.    Caitlin Seifert is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

29.     Darren Seifert is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

30.     Alton R. Seifert is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

31.     Betty A. Seifert was a resident of DeWitt County.  She passed away recently.  The Estate of Betty A. Seifert, through joint independent executors Darren Seifert and Wysenda Fischer, may be contacted by and through its attorneys, McGinnis Lochridge.

32.     John Korczynski lives in England and can be contacted by and through his attorneys, McGinnis Lochridge.

33.     Claudia Gurley was a resident of Harris County.  The Estate of Claudia Gurley, through its independent administrator Jeffrey Werner, may be contacted by and through its attorneys, McGinnis Lochridge.

34.     Dvora Cohen is a resident of Wendell, Massachusetts, Franklin County, and can be contacted by and through her attorneys, McGinnis Lochridge.

35.     David Broll is a resident of Byfield, Massachusetts, Essex County, and can be contacted by and through his attorneys, McGinnis Lochridge.

36.     Denise Wilson is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

37.     Mark Korczynski is a resident of Harris County and can be contacted by and through his attorneys, McGinnis Lochridge.

38.     Judy Erstine in Rison, Arkansas, Cleveland County, and can be contacted by and through her attorneys, McGinnis Lochridge.

39.    Mary Broll is a resident of Amherst, Massachusetts, Hampshire County, and can be contacted by and through her attorneys, McGinnis Lochridge.

40.    Carla Baker Holdings, LLC, is a Texas Limited Liability Company whose President is Carla G. Baker.  Ms. Baker is a resident of Harris and/or Fort Bend County and can be contacted by and through her attorneys, McGinnis Lochridge.

41.    H.O.'s Legacy, LLC, is a Texas Limited Liability Company whose President is Ginger Baker.  Ms. Baker is a resident of Caldwell County and can be contacted by and through her attorneys, McGinnis Lochridge.

42.    Karisha Lynn Cran Madden is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

43.    EKC Holdings, Ltd., is a Texas Limited Partnership acting by and through its General Partner, EKC Management, LLC, a Texas Limited Liability Company, acting by and through Eugene R. Cran, President.  Mr. Cran is a resident of Nueces County and can be contacted by and through his attorneys, McGinnis Lochridge.

44.    DKB Royalties, LLC, is a Texas Limited Liability Company whose President is Dusty Baker.  Mr. Baker is a resident of Caldwell County and can be contacted by and through his attorneys, McGinnis Lochridge.

45.    Vincent J. Warzecha is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

46.    Barbara Warzecha is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

47.    David Warzecha is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

48.     Rose Marie Tam is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

49.     Patsy Seidel Warzecha is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

50.     Anthony Warzecha is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

51.     Dawn S. Warzecha is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

52.     Christopher M. Warzecha is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

53.     Michael R. Warzecha is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

54.     Travis Lee Respondek is a resident of Bell County and can be contacted by and through his attorneys, McGinnis Lochridge.

55.     Timothy Kyle Respondek is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

56.     Leon J. Respondek is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

57.     Vivian M. Respondek is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

58.     Vasbinder Limited Partnership is a Texas Limited Partnership acting by and through its General Partner, Vasbinder Management, LLC, a Texas Limited Liability Company,

acting by and through Larry C. Vasbinder, Manager. Mr. Vasbinder is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

59.    Charles M. Striedel, II, Trustee of the Charles M. Striedel II Separate Trust dated January 3, 2011, is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

60.    Cynthia M. Dekowski, Trustee of the Cynthia M. Dekowski Separate Trust dated January 3, 2011, is a resident of Lavaca County and can be contacted by and through her attorneys, McGinnis Lochridge.

61.    Charles Striedel is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

62.    Joyce Striedel is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

63.    Turk Turk, L.P., is a Texas Limited Partnership acting by and through its General Partner, Nala's Nest, LLC, a Texas Limited Liability Company whose President is Betty Zgabay. Ms. Zgabay is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

64.    Mark Zgabay is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

65.    Betty Zgabay is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

66.    Teddy W. Aven and Frances J. Aven, both Individually and as Trustees of the Way Head Trust, are residents of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

67.     Dorothy Brysch is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

68.     Kimberly Burrell is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

69.     Eric W. Elder is a resident of Fort Bend County and can be contacted by and through his attorneys, McGinnis Lochridge.

70.     Margaret K. Haas is a resident of Williamson County and can be contacted by and through her attorneys, McGinnis Lochridge.

71.     Harvey Immenhauser is a resident of Victoria County and can be contacted by and through his attorneys, McGinnis Lochridge.

72.     David Lam is a resident of Harris County and can be contacted by and through his attorneys, McGinnis Lochridge.

73.     Mary Alicia Leggett Lam is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

74.     Jennifer Laymon is a resident of Guadalupe County and can be contacted by and through her attorneys, McGinnis Lochridge.

75.     Martha Ann Respondek is a resident of Nueces County and can be contacted by and through her attorneys, McGinnis Lochridge.

76.     Lenora Roberts is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

77.     Jerome R. Wild is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

78.     Janet M. Skipper, individually, and as Independent Executor and Personal Representative of the Estate of Ladislaus W. Warzecha and as Trustee of the Warzecha Family Trust, is a resident of Volusia County, Florida and can be contacted by and through her attorneys, McGinnis Lochridge.

79.     Carol L. Murray, individually, and as Independent Executor and Personal Representative of the Estate of Ladislaus W. Warzecha and as Trustee of the Warzecha Family Trust, is a resident of Montgomery County, Pennsylvania and can be contacted by and through her attorneys, McGinnis Lochridge.

80.     Gary A. Warzecha, individually, and as Independent Executor and Personal Representative of the Estate of Ladislaus W. Warzecha and as Trustee of the Warzecha Family Trust, is a resident of Chester County, Pennsylvania and can be contacted by and through his attorneys, McGinnis Lochridge.

81.     Newton M. Warzecha Jr., individually, and as Independent Executor of the Estate of Newton M. Warzecha and as Trustee of the Newton M. Warzecha, Jr., Protection Trust, is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

82.     Suzanne Smith Warzecha, individually, and as Trustee of the Suzanne Smith Warzecha Marital Trust, is a resident of Goliad County and can be contacted by and through her attorneys, McGinnis Lochridge.

83.     Mary Patricia Thamm, individually, and as Trustee of the Mary Patricia Thamm Protection Trust, is a resident of Travis County and can be contacted by and through her attorneys, McGinnis Lochridge.

84.    Andrea C. Cordell, individually, and as Trustee of the Andrea C. Cordell Protection Trust, is a resident of Pulaski County, Arkansas and can be contacted by and through her attorneys, McGinnis Lochridge.

85.    Sherri Jill Potyka was a resident of Brazos County.  The Estate of Sherri Jill Potyka, through her executor Shannon Lee Crockett, may be contacted by and through its attorneys, McGinnis Lochridge.

86.    Shannon Crockett, individually and as Trustee of the Shannon Lee Crockett Trust and the Robert Claude Lee Trust, is a resident of Brazos County and can be contacted by and through her attorneys, McGinnis Lochridge.

87.    Potyka Oil, LLC is a Texas Limited Liability Company whose Manager is Shannon Crockett.  Ms. Crockett is a resident of Brazos County and can be contacted by and through her attorneys, McGinnis Lochridge.

88.    Potyka Oil, L.P. is a Texas Limited Partnership acting by and through its General Partner Potyka Oil Management, LLC whose Manager is Shannon Crockett.  Ms. Crockett is a resident of Brazos County and can be contacted by and through her attorneys, McGinnis Lochridge.

89.    Leonard Kolodziejczyk is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

90.    Series 1, more commonly known as Alex Place, a Series of WEI & SHI Series, LLC, is an entity acting by and through its Managers and Members Willard Earl Imhoff, III, and Sylvia Hahn Imhoff who are both residents of Travis County and can be contacted by and through their attorneys, McGinnis Lochridge.

91.     Grant Vaughn Imhoff is a resident of Travis County and can be contacted by and through his attorneys, McGinnis Lochridge.

92.     Blake Hahn Imhoff is a resident of Travis County and can be contacted by and through his attorneys, McGinnis Lochridge.

93.     Willard Earl Imhoff III, is a resident of Travis County and can be contacted by and through his attorneys, McGinnis Lochridge.

94.     Series 3, more commonly known as Sunday, a Series of WEI & SHI Series, LLC, is an entity acting by and through its Managers and Members Willard Earl Imhoff, III, and Sylvia Hahn Imhoff who are both residents of Travis County and can be contacted by and through their attorneys, McGinnis Lochridge.

95.     Willard Earl Imhoff, III, and Sylvia Hahn Imhoff as next friends for Sydney Ann Imhoff and as Trustees under that Trust Agreement dated September 27, 2010 for the benefit of Grant Vaughn Imhoff, Blake Hahn Imhoff and Sydney Ann Imhoff are residents of Travis County and can be contacted by and through their attorneys, McGinnis Lochridge.

96.     Series 4, more commonly known as Davis, a Series of WEI & SHI Series, LLC, is an entity acting by and through its Managers and Members Willard Earl Imhoff, III, and Sylvia Hahn Imhoff who are both residents of Travis County and can be contacted by and through their attorneys, McGinnis Lochridge.

97.     Sylvia Hahn Imhoff is a resident of Travis County and can be contacted by and through her attorneys, McGinnis Lochridge.

98.     Series 5, more commonly known as Pete, a Series of WEI & SHI Series, LLC, is an entity acting by and through its Managers and Members Willard Earl Imhoff, III, and Sylvia

Hahn Imhoff who are both residents of Travis County and can be contacted by and through their attorneys, McGinnis Lochridge.

99.    Series 7, more commonly known as Warmuth Place, a Series of WEI & SHI Series, LLC, is an entity acting by and through its Managers and Members Willard Earl Imhoff, III, and Sylvia Hahn Imhoff who are both residents of Travis County and can be contacted by and through their attorneys, McGinnis Lochridge.

100.    Dana Weddle McLaughlin is a resident of Tarrant County and can be contacted by and through her attorneys, McGinnis Lochridge.

101.    Robert Ckodre is a resident of Karnes County and can be contacted by and through his attorneys, McGinnis Lochridge.

102.    Lawrence Ckodre is a resident of Victoria County and can be contacted by and through his attorneys, McGinnis Lochridge.

103.    Kathleen C. Parks is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

104.    Gary Ckodre, Individually and as Independent Administrator of the Estate of Donald B. Ckodre is a resident of Fort Bend County and can be contacted by and through his attorneys, McGinnis Lochridge.

105.    Ckerina Holdings, LP, acting by and through its General Partner, Ckerina MP LLC, who is acting by and through the Gary G. Ckodre 2014 Cerina MP Grantor Trust, by Gary Ckodre, its Trustee, who is a resident of Fort Bend County and can be contacted by and through his attorneys, McGinnis Lochridge.

106.    Erin Alise Ckodre is believed to be a resident of Fort Bend County and can be contacted by and through her attorneys, McGinnis Lochridge.

107.     Justin Weddle is a resident of Tarrant County and can be contacted by and through his attorneys, McGinnis Lochridge.

108.     Eagle XII Ventures LP, acting by and through its General Partner, Audrey Parsons, is a resident of Bexar County and can be contacted by and through her attorneys, McGinnis Lochridge.

109.     1935 Texas Star Legacy LP, acting by and through its General Partner, Edith Pulsak, is believed to be a resident of Prince George's County, Maryland and can be contacted by and through her attorneys, McGinnis Lochridge.

110.     Avery Brandt Read is believed to be a resident of McClennan County and can be contacted by and through her attorneys, McGinnis Lochridge.

111.     Karen Brandt Parker is believed to be a resident of Fort Bend County and can be contacted by and through her attorneys, McGinnis Lochridge.

112.     Carol Brandt Warren is believed to be a resident of Victoria County and can be contacted by and through her attorneys, McGinnis Lochridge.

113.     Patrick E. Dworaczyk is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

114.     William J. Dworaczyk is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

115.     Harold Dworaczyk is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

116.     Marvin Dworaczyk is a resident of Travis County and can be contacted by and through his attorneys, McGinnis Lochridge.

117.    Diana Dworaczyk is a resident of Travis County and can be contacted by and through her attorneys, McGinnis Lochridge.

118.    Cheryl Koopmann is a resident of Williamson County and can be contacted by and through her attorneys, McGinnis Lochridge.

119.    Peter J. Olenick, III and Mary Beth Carter, Trustees of The Peter J. Olenick Jr. Revocable Living Trust, The Peter J. Olenick Jr. Family Trust, The Peter J. Olenick, III Exemption Trust, and The Mary Beth Carter Exemption Trust are believed to be residents of Gloucester County, Virginia, and can be contacted by and through their attorneys, McGinnis Lochridge.

120.    HSSB Limited Partnership is acting by and through its General Partner, H & S, LLC, a Texas Limited Liability Company whose President is Harlan Metting.  Mr. Metting is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

121.    Harlan W. Metting is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

122.    Sharon L. Metting is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

123.    Arthur Gonzales as Independent Executor of the Estate of Mackey Gonzales and as Trustee under that Credit Shelter Trust established under the Last Will and Testament of Mackey Gonzales is believed to be a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

124.    Richard C. Gonzales is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

125.    Kathryn Kaye Gips is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

126.    Henry Schaar is a resident of Victoria County and can be contacted by and through his attorneys, McGinnis Lochridge.

127.    Mary Frances Schaar is a resident of Victoria County and can be contacted by and through her attorneys, McGinnis Lochridge.

128.    Denyse Parker is a resident of Wilson County and can be contacted by and through her attorneys, McGinnis Lochridge.

129.    Logan Parker is a resident of Wilson County and can be contacted by and through his attorneys, McGinnis Lochridge.

130.    Landon Darrell Parker is a resident of Wilson County and can be contacted by and through his attorneys, McGinnis Lochridge.

131.    Denis R. Mueller is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

132.    Sheryl L. Mueller is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

133.    Lanette Gips is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

134.    Christine Ann Srubar Kalinowski is a resident of Victoria County and can be contacted by and through her attorneys, McGinnis Lochridge.

135.    Monica Sue Srubar Sauer is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

136.    Ramona Lynne Srubar Sample is a resident of Gonzales County and can be contacted by and through her attorneys, McGinnis Lochridge.

137.    Adrian Mueller is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

138.    Donald Turner is a resident of Tarrant County and can be contacted by and through his attorneys, McGinnis Lochridge.

139.    Darlene Migura is a resident of Fort Bend County and can be contacted by and through her attorneys, McGinnis Lochridge.

140.    Evelyn Pieprzyca, Trustee of the Migura Unit B Trust, is a resident of Harris County and can be contacted by and through her attorneys, McGinnis Lochridge.

141.    Clint R. Geffert, Trustee of the CCC Future Irrevocable Trust is a resident of Black Hawk County, Iowa and can be contacted by and through his attorneys, McGinnis Lochridge.

142.    Cody Geffert, Trustee of the LA Future Irrevocable Trust is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

143.    LeAnn L. Geffert Jander, Trustee of the CCE Future Irrevocable Trust is a resident of Victoria County and can be contacted by and through her attorneys, McGinnis Lochridge.

144.    Martha Kerlick Geffert is a resident of DeWitt County and can be contacted by and through her attorneys, McGinnis Lochridge.

145.    Larry Wayne Geffert is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

146. Klein Two Bar Limited LLP is an entity acting by and through its general partner, Frank Klein. Mr. Klein is a resident of DeWitt County and can be contacted by and through his attorneys, McGinnis Lochridge.

147. David Kircher, Individually, and as Independent Executor of the Estate of Barbara Kircher and as Trustee of the Kircher Family Trust is a resident of Nueces County and can be contacted by and through his attorneys, McGinnis Lochridge.

148. Hans Kircher, Individually, and as Trustee of the Hans Kircher Trust and as Manager of HWK Resources, LLC, is a resident of Nueces County and can be contacted by and through his attorneys, McGinnis Lochridge.

149. Loring Kircher, Individually, and as Trustee of the Loring Kircher Trust and as Manager of LTK Resources, LLC, is a resident of Nueces County and can be contacted by and through his attorneys, McGinnis Lochridge.

150. Triple K Resources Corporation is a Texas Corporation acting by and through David Kircher. Mr. Kircher is a resident of Nueces County and can be contacted by and through his attorneys, McGinnis Lochridge.

151. Paula Muecke Daly as Trustee of the Muecke Family Trust and the Paula Muecke Daly 1998 Trust is a resident of Harris County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

152. Lisa Ann Muecke Caskey as Trustee of the Lisa Ann Muecke Caskey 1998 Trust is a resident of Fort Bend County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

153.    Michael David Muecke as Trustee of the Michael David Muecke 1998 Trust is a resident of Matagorda County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

154.    Bonnie Burton is a resident of Victoria County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

155.    Roger Paul Geffert, individually, and with Deborah K. Geffert as Trustees of the Geffert Family Living Trust are residents of DeWitt County, Texas and can be contacted by and through their attorneys, McGinnis Lochridge.

156.    Kristy Hahn Serold as independent executor of the Estate of Edward E. Hahn, independent executor of the Estate of Inez M. Hahn, and as successor trustee of the Edward E. Hahn Credit Shelter Trust is a resident of Guadalupe County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

157.    Robert Reed Wagner, individually, and as co-executor of the Estate of Walter R. Wagner is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

158.    Billie J. Wagner, individually, and as co-executor of the Estate of Walter R. Wagner is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

159.    Walter P. Wagner, L.P., acting by and through its General Partner Robert R. Wager, is a resident DeWitt County, Texas and can be contacted by and through its attorneys, McGinnis Lochridge.

160.    Sandra Fay McCampbell is a resident of Nueces County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

161.    Walter Richard Wagner is a resident of Bexar County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

162.    Sylvia Imhoff is a resident of Travis County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

163.    Series 11, more commonly known as Hahn 50, a series of WEI & SHI Series, LLC, by and through Willard Earl Imhoff, III, and Sylvia Hahn Imhoff, its managers and members, who are residents of Travis County, Texas and may be contacted by and through their attorneys, McGinnis Lochridge.

164.    Joachim Strenk is a resident of Williamson County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

165.    Strenk Family Partnership LLC acting by and through its member Joachim Strenk who is a resident of Williamson County, Texas and can be contacted by and through its attorneys, McGinnis Lochridge.

166.    Andrey M. Tymniak is a resident of Walker County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

167.    Karen Tymniak is a resident of Walker County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

168.    Dennis J. Roggenkamp, individually, and as Trustee of the Dennis J. Roggenkamp Trust is a resident of Anchorage, Alaska and can be contacted by and through his attorneys, McGinnis Lochridge.

169.    Susan E. Roggenkamp as Trustee of the Susan E. Roggenkamp Trust is a resident of Anchorage, Alaska and can be contacted by and through her attorneys, McGinnis Lochridge.

Case 6:23-cv-00034   Document 50   Filed on 06/10/24 in TXSD   Page 41 of 46
170.    Weldon-Stacey-Blake Corp., acting by and through its President Stayton C. Weldon, who is a resident of DeWitt County, Texas and can be contacted by and through its attorneys, McGinnis Lochridge.

171.    Weldon-Stacey-Blake Minerals, LLC, acting by and through its member Stayton C. Weldon, who is a resident of DeWitt County, Texas and can be contacted by and through its attorneys, McGinnis Lochridge.

172.    Linda Koenning Krause, individually, as Independent Executor of the Estate of William A. Krause, as Trustee of the Linda K. Krause Living Trust, and as Trustee of the Linda K. Krause Mineral Trust, is a resident of Victoria County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

173.    Roger D. Krause, individually, and as General Partner of the Roger D. Krause Family Partnership, Ltd., is a resident of Victoria County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

174.    Louis V. Ciaccio, Jr., is a resident of Brazoria County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

175.    Jacqueline Ciaccio is a resident of Brazoria County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

176.    Mark Weischwill as Trustee of the Marcellus Weischwill Residuary Trust is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

177.    Jason Allen Geffert is a resident of Burleson County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

41

178.    Ross Evan Geffert is a resident of Montgomery County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

179.    Amanda Kaye Smith is a resident of Harris County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

180.    Iona Mae Buchhorn as Trustee of the Edgar H. Buchhorn and Iona Mae Buchhorn Revocable Living Trust is a resident of DeWitt County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

181.    Evelyn Pieprzyca is a resident of Harris County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

182.    Benjamin Jaloway, Individually, and as Independent Executor of the Estate of Leonard E. Kolodziejczyk, is a resident of Austin County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

183.    Patrick Jaloway is a resident of Austin County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

184.    Patricia Danielle Jaloway is a resident of Austin County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

185.    Arthur Gonzales is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

186.    Iris G. Wild is a resident DeWitt County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

187.    Blanca Warzecha is a resident of DeWitt County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

188.    Christopher Anthony Warzecha is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

189.    Jeffrey Lyle Todes is a resident of Harris County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

190.    Stephen B. Todes is a resident of Brazoria County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

191.    Flying H. Minerals, LP, by Henry Schaar as Manager of Flying H, LLC, its General Partner. Mr. Shaar is a resident of Victoria County and can be contacted by and through his attorneys, McGinnis Lochridge.

192.    The Donald N. Turner and Verda Kathleen Hogue Turner Revocable Trust, by its co-trustees Donald N. Turner and Verda H. Turner who are residents of Tarrant County, Texas and can be contacted by and through their attorney, McGinnis Lochridge.

193.    Stephen Broll is a resident of Wendell, Franklin County, Massachusetts, and can be contacted by and through his attorneys, McGinnis Lochridge.

194.    Seifert Fischer LLC by its President/Manger Darren Seifert who is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

195.    The Adam Wade Warrant Protection Trust by its Trustee Adam Wade Warren who is a resident of Victoria County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

196.    The Jason Wayne Warren Protection Trust by its Trustee Jason Wayne Warren who is a resident of Fort Bend County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

197.    Dan Braun is a resident of Harris County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

198.    The Estate of Marian Braun, by its Executor Dan Braun, who is a resident of Harris County, Texas and may be contacted by and through his attorneys, McGinnis Lochridge.

199.    The Estate of Lawrence Ckodre, by its Executor Norlene S. Ckodre who is a resident of Victoria County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

200.    Norlene Ckodre is a resident of Victoria County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

201.    Brett Ckodre is a resident of DeWitt County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

202.    The Estate of Adrian Mueller, by its Executor Denis Mueller who is a resident of DeWitt County, Texas and can be contacted by and through his/her attorneys, McGinnis Lochridge.

203.    The Estate of Lanette Gips, by its Executor James Otis Gips who is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

204.    The Estate of Dawn Warzecha, by its Executor Anthony B. Warzecha who is a resident of DeWitt County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

205.    The Estate of Larry Geffert, by its Executor Martha Geffert who is a resident of DeWitt County, Texas and can be contacted by and through his/her attorneys, McGinnis Lochridge.

206.    The Larry Geffert Family Trust, by its trustee Martha Geffert who is a resident of DeWitt County, Texas and can be contacted by and through their attorneys, McGinnis Lochridge.

207.    The Estate of Richard Gonzales, by its Executor Arthur Gonzales who is a resident of DeWitt County, Texas and can be contacted by and through his/her attorneys, McGinnis Lochridge.

208.    Patricia Danielle Davis is a resident of Austin County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

209.    The Estate of Vincent Warzecha, by its Executor Barbara Warzecha who is a resident of DeWitt County, Texas and can be contacted by and through his/her attorneys, McGinnis Lochridge.

210.    The Estate of Harvey Immenhauser by its Executors Brandon Immenhauser, a resident of Victoria County, Texas, and Lisa Immenhauser, a resident of Victoria County, Texas, both of whom can be contacted by and through their attorneys, McGinnis Lochridge.

211.    Brandon Immenhauser Descendant's Trust by its Trustee, Brandon Immenhauser, is a resident of Victoria County, Texas and can be contacted by and through his attorneys, McGinnis Lochridge.

212.    Lori Immenhauser Descendant's Trust by its Trustee, Lori Immenhasuer, who is a resident of Victoria County, Texas and can be contacted by and through her attorneys, McGinnis Lochridge.

213.    Steven Immenhauser Descendant's Trust by its Trustee, Steven Immenhauser, who is a resident of DeWitt County, Texas, and can be contacted by and through his attorneys, McGinnis Lochridge.

214.    Harvey Immenhauser Marital Trust by its Co-Trustees, Brandon Immenhauser and Lori Immenhauser, who are residents of Victoria County, Texas and can be contacted by and through their attorneys, McGinnis Lochridge.

215.    Defendant Devon Energy Production Company, L.P., f/k/a GeoSouthern DeWitt Properties, LLC, is a foreign limited partnership doing business in DeWitt County, Texas, and with its principal office located at 333 West Sheridan Avenue, Oklahoma City, OK 73102. Defendant Devon Energy Production Company, L.P. has appeared in this lawsuit.

216.    Defendant GeoSouthern Energy Corporation is a Texas Corporation doing business in DeWitt County, Texas, and with its principal office located at 1425 Lake Front Circle, Suite 200, The Woodlands, Texas 77380.  Defendant GeoSouthern Energy Corporation has appeared in this lawsuit.

217.    Defendants BPX Production Company, BPX Properties (NA) LP as the successors in interest to BHP Billiton Petroleum Properties (N.A.), LP f/k/a Petrohawk Properties LP and Petrohawk Energy Company, and BPX Operating Company as the merger successor to BPX Properties (NA) LP are Texas Corporations doing business in DeWitt County, Texas, with their principal offices located at 501 Westlake Park Blvd., Houston, Texas 77079. The BPX Defendants have appeared in this lawsuit.